The Honorable David G. Estudillo

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| LAUREN STROBLE,<br>Plaintiff,<br>v.<br>WALMART INC.,<br>Defendant. | NO. 3:21-cv-05627 DGE<br><br>DEFENDANT WALMART INC.'S MOTION TO EXCLUDE PLAINTIFF'S EXPERT LEVI DIXON<br><br>NOTE ON MOTION CALENDAR: JUNE 29, 2026<br><br>ORAL ARGUMENT REQUESTED |

## I. RELIEF REQUESTED

Defendant Walmart Inc. ("Walmart" or "Defendant") respectfully requests that this Court exclude the testimony of Plaintiffs' human factors expert, Levi Dixon, since his opinions and conclusions lack foundation and/or are not based on reliable methodologies, and thus, do not satisfy the requirements of the Federal Rule of Evidence 702 and the requirements of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

## II. STATEMENT OF FACTS

### A. Underlying Incident

On May 9, 2019, Plaintiff entered the Walmart located at 1401 Galaxy Dr. NE, Lacey, Washington, 98516 ("the store"/"Lacey Walmart"). *See* Dkt. #48 at 14 (Amended Compl.). While there, Plaintiff entered the changing room to try on a pair of pants. *Id.* at ¶ 2.8. While trying on the pants, Plaintiff somehow "sustained personal injuries." *Id.* at ¶ 2.9.



**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4000
Seattle, WA 98101-2380
(206) 628-6600

B. Plaintiff's Expert Dixon

The Minute Order Setting Trial and Pretrial Dates provided a deadline for Expert Witness Disclosure/Reports of February 27, 2026. Dkt. #53.

On February 27, 2026, Plaintiff served a copy of her initial expert disclosure per FRCP 26(a)(2), which *only* indentified Levi Dixon, a human factors expert.[1] *See Cullen Decl.*, Ex. 1.

1. Report of Levi Dixon

Plaintiff has disclosed Levi Dixon, M.S., CSP, CHFP, CXLT, ("Dixon") as an expert witness in this matter. Dixon states that he holds certifications as a Certified Safety Professional, Certified Human Factors Professional, and Certified XL Tribometrist. *See* Cullen Decl., Ex. 1. He reports that he has degrees in Technology (Manufacturing option) and Human Factors & Ergonomics, and states that his work focuses on safety, human factors engineering, and risk management. *Id*.

In preparing his report, Dixon states that he reviewed photographs, the incident report with witness statements, documents produce by Walmart, and the deposition testimony of Plaintiff Lauren Stroble. *Id*., [at p. 1 of Expert Report]. Dixon did not conduct a site visit. Dixon did not perform slip-resistance testing of the flooring installed at the time of Plaintiff's fall, or any substantially similar flooring. *Id*. He expressly did not "measure the coefficient of friction of textile material (like linen) on the flooring surface in the dressing room." *Id*., Ex. 1 [at p. 6 of Expert Report].

Before offering his opinions, Dixon asserts that his conclusions are based on his "education, training, and experience in Safety and Human Factors Engineering," along with his

[1] On March 18, 2026, defense counsel contacted Plaintiff's counsel to inquire about medical documentation related to medical treatment that Plaintiff testified to during her deposition. *Cullen Decl*., Ex. 2. Rather than supplementing the requested medical documentation, Plaintiff's counsel informed defense counsel that there was an "oversight that we will get correct." *Id*. On March 27, 2026, Plaintiff served a copy fo "Plaintiff's Supplemental Disclosure Expert Witnesses," along with a copy of a report authored by David Badger, M.D., dated July 19, 2024. Plaintiff has since confirmed that this witness will not be called at trial. *Cullen Decl*., Ex. 3.



**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4000
Seattle, WA 98101-2380
(206) 628-6600

review of discovery materials. *Id.*, [at p. 1 of Expert Report]. Dixon expressly notes that his analysis is based on the information available to him. *Id.*

Dixon offers a series of conclusions framed as opinions to a "reasonable degree of Safety and Human Factors Engineering certainty." *Id*. [at p. 6 of Expert Report]. Dixon formed the following five opinions: (1) the department flooring was removed/altered, which eliminated the possibility of performing slip resistance testing of textile material such as linen on the surface in the area where Plaintiff slipped and fell; (2) it is "expected" that patrons will stand up when trying on pants in the dressing room; (3) it is "predictable" that a pedestrian "will step onto the floor with fabric between their foot and the flooring surface, including at times when they may already be off balance"; (4) the interaction of fabric and vinyl flooring reduced the coefficient of friction, which "exposed" Ms. Stroble to "a risk of harm due to slipping": and (5) Plaintiff was behaving in a foreseeable/predictable manner at the time of her incident. *Id*.

Mr. Dixon does not opine whether the installation of the flooring was negligent, or whether any aspect of the installation resulted in unsafe conditions causing Ms. Stroble to slip and fall.

## III. STATEMENT OF ISSUES

Whether Mr. Dixon's report and testimony must be excluded under FRE 702 for lack of foundation and reliable methodology.

## IV. EVIDENCE RELIED UPON

This motion is based on the Declaration of Mary W. Cullen and exhibits attached thereto, and records and pleadings on file with the Court.

## V. AUTHORITY

### A. *Daubert* and Rule 702 Standards

FRE 702 permits a person with "specialized knowledge" to testify as an expert if his knowledge will "assist the trier of fact to understand the evidence or to determine a fact is



**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4000
Seattle, WA 98101-2380
(206) 628-6600

issue." *See e.g., Stilwell v. Smith & Nephew, Inc.*, 482 F. 3d 1187, 1191 (9th Cir. 2007). The rule states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

FRE 702. Fed. R. Evid. 403 permits the court to exclude evidence, including an expert's opinion, if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or needless presentation of cumulative evidence. Fed. R. Evid. 403.

Although expert testimony is liberally admissible under the Federal Rules of Evidence, district courts must be vigilant in demanding that the testimony meet the prerequisites under Fed. R. Evid. 702; *Daubert*, 509 U.S. at 588- 89. The proper exercise of that gatekeeping function is critically important "to ensure the reliability and relevancy of expert testimony." *Jinro Am. Inc. v. Secure Investments, Inc.*, 266 F.3d 993, 1005 (9th Cir. 2001) (*citing Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 158,119 S. Ct. 1167, 1179, 143 L. Ed. 2d 238 (1999)). This gatekeeping role is critically important for the court as expert witnesses come "before the jury cloaked with the mantle of an expert." *Jinro Am. Inc., supra*, 266 F.3d at 1004. This mantle allows a witness to "testify based on hearsay information, and to couch his observations as generalized 'opinions' rather than as firsthand knowledge." *Id.* Additionally, expert witness testimony is "likely to carry special weight with the jury." *Id.* "For these reasons, care must be taken to assure that a proffered witness truly qualifies as an expert, and



**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4000
Seattle, WA 98101-2380
(206) 628-6600

that such testimony meets the requirements of Rule 702." *Id.* "The objective of [the gatekeeping] requirement is to ensure the reliability and relevancy of expert testimony. It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152.

When evaluating the reliability of an expert's testimony, the Court must determine whether the testimony has "a reliable basis in the knowledge and experience of [the relevant] discipline." *Daubert I*, 509 U.S. at 592. It is proper for the Court to consider each expert's knowledge, skill, and experience as they are applied to the expert's conclusions.[2] *See, Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1015–16 (9th Cir. 2004). In addition, "any step that renders [the expert's] analysis unreliable . . . renders the expert's testimony inadmissible. This is true whether the step completely changes a reliable methodology or merely misapplies that methodology." *In re Silicone Gel Breast Implants Prod. Liab. Litig.*, 318 F. Supp. 2d 879, 890 (D.C. Cal. 2004).

**The Court "need not admit an expert opinion that is connected to the underlying data "only by the *ipse dixit* of the expert.'"** *Henricksen v. ConocoPhillips Co.*, 605 F.Supp.2d 1142, 1153 (E.D. Wash. 2009), *quoting, Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). "The trial court's gate-keeping function requires more than simply taking the expert's word for it." *Henricksen*, 605 F.Supp.2d at 1154, *quoting, Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1319 (9th Cir.1995) ("Daubert II "). "[T]he expert's bald assurance of validity is not enough. Rather, the party presenting the expert must show that the expert's findings are based on sound science, and this will require some objective, independent

[2] The Court's gatekeeping role under Daubert and Rule 702 applies to any proffered expert testimony, not just "scientific" testimony. *Kumho Tire Co., supra*, 526 U.S. at 138. In such cases, the trial court may focus on alternative factors that are better-suited to the specific type of expertise at issue. *Id.* at 150-52.



**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4000
Seattle, WA 98101-2380
(206) 628-6600

validation of the expert's methodology." *Daubert II*, 43 F.3d at 1316. "If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Fed. R. Evid. 702 Advisory Committee's Note.

Finally, as the proponent of these experts, plaintiff "has the burden of proving admissibility" which "must be established by a preponderance of the evidence." *Henricksen*, 605 F.Supp.2d at 1154. "The focus [of the inquiry] ... must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595.

1. <u>Dixon's Opinions Will Not Assist the Trier of Fact Because They Lack Specialized Knowledge</u>

Mr. Dixon's opinions that the "interaction of the fabric and vinyl floor surface reduced the coefficient of friction" to unsafe levels and caused or contributed to Plaintiff's fall should be excluded. Cullen Decl., Ex. 1 [at p. 6 of Dixon Report]. Mr. Dixon did not identify, inspect, or test the subject floor. Because of this, Mr. Dixon did not measure available slip resistance under the conditions at issue, did not analyze the traction demands of the specific posture of Plaintiff (i.e., standing on one leg while donning pants), and did not quantify any reduction from the textile at issue (i.e., linen) when interposed on the flooring at issue.

Defendant retained Scott Reed to rebut Mr. Dixon's opinions. *See* Cullen Decl., Ex. 4. Mr. Reed explains that Plaintiff was not walking or in "active locomotion" when she fell. Rather, she was standing still on her left foot and stepping down with her other foot to try pants on. *Id*. As Reed explains, "when one foot is on the ground and the trailing foot is swinging forward above the ground," the coefficient of friction is substantially lower than it is during an active gait, which materially changes slip probability analysis. Dixon attempts to legitimize his opinions through citation to literature that is inapposite, because the scientific literature cited



**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4000
Seattle, WA 98101-2380
(206) 628-6600

are all based on traction demands during "active locomotion," which again, is not at issue here. *Id*.

Further, Dixon does not provide any literature or basis to support the type of "expected" human behavior addressed in his report. Dixon merely speculates that there is "potential" for one's foot to get caught on/in a pant leg, which could result in loss of balance. This generalized observation of how people dress themselves—regardless of age, height, weight, gender, and so forth—is a sweeping attempt to transform what is really an individual issue, into strict liability.

This case involves no walking, no foreign substance, and no slip-and-fall mechanism like those addressed in Mr. Dixon's report. Accordingly, Mr. Dixon offers no specialized knowledge relevant to the facts of this case. FRE 702(a). In the absence of any testing, the literature he relies upon is both misleading and inapplicable to the circumstances at issue. Having highlighted these flaws which render his report inadmissible under FRE 702 and FRE 403, his opinions reduce to nothing more than general observations—that patrons may stand, may stand on textiles, and that standing on one leg can, as a matter of common sense, affect balance. For these reasons, the Court should exclude Mr. Dixon's report and testimony.

2. <u>Dixon's Opinions Lack Sufficient Facts or Data, and His Methods Are Unreliable</u>

Dixon "was not able to conduct slip resistance testing on the subject floor," and he took no tribometer measurements of the subject floor or any exemplar to quantify available slip resistance or any effect of interposed fabric. Cullen Decl., Ex. 1 [p. 1, 6 of Dixon Report]. Without case-specific coefficient of friction values for the floor, the garment (i.e., linen), or the interaction between the floor and the fabric, his conclusory opinions that the flooring was "unsafe" and causation opinions lack foundation. FRE 702(b). Courts need not admit an expert opinion connected to underlying data simply because of Dixon's assertions or word. In this



**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4000
Seattle, WA 98101-2380
(206) 628-6600

case, there is no scientific validation of Dixon's conclusions—which rest on a clear leap in logic, with no demonstrated nexus between Walmart's conduct, and Plaintiff's fall.

His interpretation is not supported by testing, measurement, or other scientific analysis. As *Daubert II* makes clear, an expert's "bald assurance of validity is not enough"; the proponent must demonstrate that the expert's findings are grounded in sound science and validated methodology. *Id.*, 43 F.3d at 1316. In essence, Dixon has merely inferred how the fabric–floor interaction "created a slippery and unsafe condition" and caused or contributed to the fall—classic conclusory assertions unsupported by testing or validated modeling. Even more, he bases his findings on the evidence that does not exist in this case.[3] This is not expert analysis; it is advocacy for a plaintiff-favorable outcome.

Dixon's claims that his opinions are based on his experience are equally deficient. When an expert relies primarily on experience, Rule 702 requires the expert to explain how that experience leads to the conclusion reached, why it provides a sufficient basis for the opinion, and how it is reliably applied to the case-specific facts. *See* Fed. R. Evid. 702 advisory committee's note. Dixon does none of this. He neither articulates a replicable analytical process nor demonstrates how his experience in prior Walmart slip-and-fall cases bridges the gap between an image of a dressing room and a definitive causation opinion. For these reasons, his opinions fails under FRE 702.

3. <u>Any Marginal Probative Value of Dixon's Opinions Are Substantially Outweighed by the Risks of Confusion and Misleading the Jury</u>

If the Court finds that Dixon's opinions satisfy FRE 702, the Court should still exclude his report and testimony because presenting generalized literature, a 0.50 "safety" benchmark, and floor-inferred-as-vinyl to support causal conclusions—without any testing, measurements,

[3] For example, Plaintiff testified she was barefoot, whereas Dixon cites to scientific literature involving socks. In addition, there was no substance on the ground, yet Dixon addresses on page 2 how types of contaminants on the floor lower the available friction. If the garment is a contaminant, that was placed there by *Plaintiff*—not Walmart.



**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4000
Seattle, WA 98101-2380
(206) 628-6600

or confirmed floor identity—invites the jury to treat unverified generalities as case-specific proof. Per Reed's rebuttal, a proper scientific-based assessment of a slip risks evaluates both the available slip resistance of a surface (which Dixon could not measure), and the coefficient of friction utilized during gait (which Dixon does not address). For this additional reason, the Court should exclude Dixon's opinions in this matter.

## VI. CONCLUSION

In light of and based on the foregoing, Defendant asks the Court to exclude Dixon's report and testimony for lack of foundation. Dixon does not assist the trier of fact by applying specialized knowledge to illuminate the evidence. Instead, he simply infers what happened and why—based on the same evidence available that would be presented to the jury if this case goes to trial—while supplying an ambiguous plaintiff-favorable interpretation of the most non-ambiguous facts. That is not expert methodology. It is advocacy posing as opinion testimony.

DATED this 8th day of June, 2026.

*s/ Mary W. Cullen*
Eddy Silverman, WSBA #53494
Mary W. Cullen, WSBA #58747
WILLIAMS, KASTNER & GIBBS PLLC
601 Union Street, Suite 4000
Seattle, WA 98101-2380
Telephone: (206) 628-6600
Fax: (206) 628-6611
Email: esilverman@williamskastner.com
mcullen@williamskastner.com

*Attorneys for Defendant Walmart Inc.*

## CERTIFICATE OF SERVICE

The undersigned certifies under penalty of perjury under the laws of the State of Washington that on the date indicated below, I caused service of a true and correct copy of the foregoing document in the manner indicated below to:

***Counsel for Plaintiff***
Michael "Mac" Brown, WSBA #049722
Angela Foster, WSBA #52269
Rebekah Young, WSBA #55555
SEARS INJURY LAW, PLLC
1011 E. Main, Suite 208
Puyallup, WA 98372
Phone: 253-566-5938
Email: mac@SearsInjuryLaw.com
angela@SearsInjuryLaw.com
bekah@SearsInjuryLaw.com
brittany@searsinjurylaw.com

☑ Via ECF/Filing
☐ Via Legal Messenger
☐ Via Facsimile
☑ Via Electronic Mail
☐ Via U.S. Mail

DATED this 8th day of June 2026.

*/s/ Maria Tokatjian*___________________
Maria Tokatjian, Legal Assistant



**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4000
Seattle, WA 98101-2380
(206) 628-6600